UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

---

| | |
|---|---|
| SHIVA STEIN, | : |
| | : |
| Plaintiff, | : Civil Action No. _____ |
| | : |
| v. | : |
| | : **COMPLAINT FOR VIOLATIONS OF** |
| NAVISTAR INTERNATIONAL | : **SECTIONS 14(a) AND 20(a) OF THE** |
| CORPORATION, TROY A. CLARKE, JOSE | : **SECURITIES EXCHANGE ACT OF** |
| MARIA ALAPONT, STEPHEN R. D'ARCY, | : **1934** |
| JEFFREY A. DOKHO, VINCENT J. | : |
| INTRIERI, MARK H. RACHESKY, | : **JURY TRIAL DEMANDED** |
| CHRISTIAN SCHULZ, KEVIN M. | : |
| SHEEHAN, DENNIS A. SUSKIND, and | : |
| JANET T. YEUNG, | : |
| | : |
| Defendants. | : |

---

Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1.  This is an action brought by Plaintiff against Navistar International Corporation ("Navistar or the "Company") and the members of Navistar's board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), in connection with the proposed acquisition of Navistar by TRATON SE, a *Societas Europaea* ("TRATON"), and TRATON's affiliates.

2.  Defendants have violated the above-referenced sections of the Exchange Act by causing a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A

(the "Proxy Statement") to be filed on December 22, 2020 with the United States Securities and Exchange Commission ("SEC") and disseminated to the Company's stockholders. The Proxy Statement recommends that the Company's stockholders vote in favor of a proposed transaction whereby Dusk Inc. ("Merger Sub") will merge with and into Navistar, with Navistar surviving the merger and becoming a wholly-owned indirect subsidiary of TRATON (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement"), each Navistar common share issued and outstanding will be converted into the right to receive $44.50 in cash (the "Merger Consideration").

3. As discussed below, Defendants have asked Navistar's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the Company's financial forecasts and financial analyses conducted by the financial advisors of the Company, J.P. Morgan Securities LLC ("J.P. Morgan") and PJT Partners KP ("PJT"), in support of their fairness opinions, and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

4. It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Navistar stockholders or, in the event the

Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Navistar in incorporated in this District.

## PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of Navistar common stock and has held such stock since prior to the wrongs complained of herein.

10. Individual Defendant Troy A. Clarke ("Clarke") has served as a member of the Board since 2017, as Executive Chairman since July 2020, and as Chairman of the Board since February 2017. Clarke was also President and Chief Executive Officer of the Company from April 2013 to July 2020.

11. Individual Defendant Jose Maria Alapont has served as a member of the Board since 2016.

12. Individual Defendant Stephen R. D'Arcy has served as a member of the Board since 2016.

13. Individual Defendant Jeffrey A. Dokho has served as a member of the Board since 2017.

14. Individual Defendant Vincent J. Intrieri has served as a member of the Board since 2012.

15. Individual Defendant Mark H. Rachesky has served as a member of the Board since 2012.

16. Individual Defendant Christian Schulz has served as a member of the Board since 2018.

17. Individual Defendant Kevin M. Sheehan has served as a member of the Board since 2018.

18. Individual Defendant Dennis A. Suskind has served as a member of the Board since 2016.

19. Individual Defendant Janet T. Yeung has served as a member of the Board since 2016.

20. Defendant Navistar is incorporated in Delaware and maintains its principal offices at 2701 Navistar Drive, Lisle, Illinois 60532.  The Company's common stock trades on the New York Stock Exchange under the symbol "NAV."

21. The defendants identified in paragraphs 10-19 are collectively referred to as the "Individual Defendants" or the "Board."

22. The defendants identified in paragraphs 10-20 are collectively referred to as the "Defendants."

**SUBSTANTIVE ALLEGATIONS**

**A.      The Proposed Transaction**

23.     Navistar, through its subsidiaries, manufactures and sells commercial trucks, diesel engines, school and commercial buses, and service parts for trucks and diesel engines worldwide. The Company operates through four segments: Truck, Parts, Global Operations, and Financial Services.  It manufactures and distributes Class 4 through 8 trucks and buses in the common carrier, private carrier, government, leasing, construction, energy/petroleum, and student and commercial transportation markets under the International and IC brands; and designs, engineers, and produces sheet metal components, including truck cabs and engines.  The Company also provides customers with proprietary products needed to support the International commercial truck, IC bus, and engine lines, as well as other product lines; and a selection of other standard truck, trailer, and engine aftermarket parts.  In addition, it manufactures and distributes mid-range diesel engines, as well as provides customers with additional engine offerings in the agriculture, marine, genset, and light truck markets; sells engines to original equipment manufacturers (OEM) for various on-and-off-road applications; and offers contract manufacturing services under the MWM brand to OEMs for the assembly of their engines.  Further, the company provides retail, wholesale, and lease financing of products of its trucks and parts, as well as financing for wholesale and retail accounts receivable. Additionally, it exports trucks, buses, and engines.  The Company markets its commercial products through an independent dealer network, as well as through retail outlets; and its reconditioned used trucks to owner-operators and fleet buyers through its network of used truck dealers.  It operates approximately 1,052 outlets in the United States and Canada, and 89 outlets in Mexico.  Navistar was founded in 1902 and is headquartered in Lisle, Illinois.

24.     On November 7, 2020, Navistar announced that it had entered into a proposed transaction:

MUNICH & LISLE, Ill., November 7, 2020 – TRATON SE ("TRATON"), one of the world's largest commercial vehicle manufacturers, and Navistar International Corporation ("Navistar") (NYSE: NAV), a leading U.S. truck maker, today announced that they have entered into a definitive merger agreement pursuant to which TRATON will become the owner of all of the outstanding common shares of Navistar not already owned by TRATON at a price of USD 44.50 per share in cash. TRATON currently owns 16.7% of the outstanding shares of common stock of Navistar.

Beginning in March 2017, TRATON and Navistar have benefitted from a strategic alliance that has delivered significant value to both companies through increased purchasing scale and the integration of new technologies. This transaction builds on that success by combining TRATON's strong position in Europe and substantial presence in South America with Navistar's complementary footprint in North America to create a global company well-positioned to benefit from enhanced brand performance, increased innovation and industry-leading capabilities.

"Today's announcement accelerates our Global Champion Strategy by expanding our reach across key truck markets worldwide, including scale and capabilities to deliver cutting-edge products, technologies and services to our customers," said TRATON CEO Matthias Gründler. "Together, we will have an enhanced ability to meet the demands of new regulations and rapidly developing technologies in connectivity, propulsion and autonomous driving for customers around the world. Navistar has been a valuable partner, and we are confident this combination will deliver compelling strategic and financial benefits, create enhanced opportunities for both Navistar and TRATON, and best position us to drive sustained value in the evolving global commercial vehicle industry."

"This transaction builds upon our highly collaborative and successful strategic alliance and further enhances the growth trajectory of the combined company, while delivering immediate and substantial value to our shareholders," said Navistar President and CEO Persio Lisboa. "We look forward to continuing to work with the TRATON team to create opportunities for our employees and provide an outstanding experience for our customers and dealers through best-in-class products, services and technologies."

> Gunnar Kilian, member of the Board of Management of Volkswagen AG and responsible for the Truck & Bus division, said: "Volkswagen is TRATON's biggest shareholder. The agreement is thus an important milestone for Volkswagen because it underpins our strong strategic commitment to continue driving growth also during the ongoing challenging economic climate. The acquisition of Navistar will significantly leverage TRATON's positioning in North America, one of the biggest and most profitable markets for heavy trucks. Together, the companies can enhance scale and reach in key markets as well as create further synergies."
>
> **Financing**
>
> The sources of funding for the cash acquisition of the outstanding Navistar shares not already owned by TRATON includes fully committed financing by Volkswagen Group for the equity purchase price of about USD 3.7 billion. TRATON remains committed to maintaining an investment grade rating.
>
> **Timing and Approvals**
>
> The transaction is targeted to close in mid 2021, and is subject to Navistar shareholder approval, customary closing conditions as well as regulatory approvals. Major shareholders Icahn Capital LP and MHR Fund Management LLC have agreed to vote their shares in favor of the transaction.

25. The Board has unanimously approved the Proposed Transaction. It is therefore imperative that Navistar's stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.** **The Materially Incomplete and Misleading Proxy Statement**

26. On December 22, 2020, Navistar filed the Proxy Statement with the SEC in connection with the Proposed Transaction. The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed

7

with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Navistar Financial Projections*

27.   The Proxy Statement fails to provide material information concerning financial projections prepared by Navistar management and relied upon by the financial advisors in their analyses. The Proxy Statement indicates that in connection with the Proposed Transaction, the Company's management prepared certain non-public financial forecasts in July 2020 for the fiscal years 2020 to 2026 and certain unaudited financial extrapolations for the fiscal years 2027 to 2029 (the "July Management Projections") and provided them to the Board and the financial advisors with forming a view about the stand-alone valuation of the Company. In October 2020, the Company's management prepared certain non-public financial forecasts for the fiscal years 2020 to 2026 and certain unaudited financial extrapolations for the fiscal years 2027 to 2030 using two scenarios for the Company, the Base Case and Upside Case (the "October Management Projections," and with the July Management Projections, the "Management Projections"). The Company also prepared a 2020 Strategic Plan and its August Operational Update during its ordinary course of business, heretofore referred to as the "Company Projections." Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that Navistar's management provided to the Board and the financial advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they

cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

28. In regards to the Company Projections, the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: (i) Adjusted EBITDA, (ii) Manufacturing Adjusted EBITDA, (iii) Manufacturing EBITDAPO, and (iv) Unlevered FCF, but fails to provide line items used to calculate these metrics and/or a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

29. When a company discloses non-GAAP financial measures in a proxy statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

30. The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other

non-discretionary expenditures that are not deducted from the measure.[1]

31. Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures to make the non-GAAP metrics included in the Proxy Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Financial Analyses*

32. First, it is unclear whether both Financial Advisors conducted the various financial analyses jointly, and the rationale for retaining two separate financial advisors to conduct the same financial analyses.

33. With respect to the financial advisors' *Public Trading Multiples* Analysis for the Company, the Proxy Statement omits the financial metrics for each of the selected companies, or even summary statistics as to those same financial metrics. Instead, the Proxy Statement discloses only the reference range selected by the financial advisors, without reference to any of the actual multiples found in the analysis.

34. With respect to the financial advisors' *Discounted Cash Flow Analysis* for the Company, the Proxy Statement fails to disclose: (i) the range of terminal values calculated for the Company; (ii) the inputs and assumptions underlying the application of the range of perpetuity growth rates from 1.0% to 2.0% to the Company's unlevered free cash flow; (iii) the inputs and assumptions underlying the range of discount rates ranging from 9.5% to 10.5%; and (iv) the Company's terminal year unlevered, after-tax free cash flows.

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

35. With respect to the financial advisors' *Selected Transaction Analysis*, the Proxy Statement fails to disclose the individual multiples and financial benchmarking metrics for each of the transactions observed by the financial advisors in their analysis.

36. In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

37. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

38. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

39. Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, financial

["

analysis that were prepared by the financial advisors and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

40. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

41. Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully. Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives and the Company's financial projections.

42. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

43. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

44. The Individual Defendants acted as controlling persons of Navistar within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of Navistar, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Navistar, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

45. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

46. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Navistar, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Proxy Statement.

47. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

48. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

49. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

50. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

  C. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

  D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

  E. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: January 7, 2021       **RIGRODSKY & LONG, P.A.**

             By: */s/ Gina M. Serra*
**OF COUNSEL:**         Seth D. Rigrodsky (#3147)
              Gina M. Serra (#5387)
**WOLF HALDENSTEIN ADLER**  300 Delaware Avenue, Suite 210
**FREEMAN & HERZ LLP**     Wilmington, DE 19801
Gloria Kui Melwani        Telephone: (302) 295-5310
270 Madison Avenue       Facsimile: (302) 654-7530
New York, NY 10016       Email: sdr@rl-legal.com
Telephone: (212) 545-4600     Email: gms@rl-legal.com
Facsimile: (212) 686-0114
Email: melwani@whafh.com     *Attorneys for Plaintiff*